**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOHN ANDREWS,
Plaintiff-Appellant,

v.

BUCKMAN LABORATORIES,
INCORPORATED,                                        No. 98-1189
Defendant-Appellee,

and

BETZ PAPER CHEM, INCORPORATED,
Defendant.

Appeal from the United States District Court
for the District of South Carolina, at Florence.
Cameron McGowan Currie, District Judge.
(CA-95-3920-4-22)

Argued: January 29, 1999

Decided: May 21, 1999

Before WILKINS and KING, Circuit Judges, and
GOODWIN, United States District Judge for the
Southern District of West Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Walter Ronald Bonds, Chicago, Illinois, for Appellant.
Donald Alan Cockrill, OGLETREE, DEAKINS, NASH, SMOAK &

STEWART, P.C., Greenville, South Carolina, for Appellee. **ON BRIEF:** Martin S. Driggers, DRIGGERS & BAXLEY, Hartsville, South Carolina, for Appellant. Kimila L. Wooten, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., Greenville, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

John Andrews sued Buckman Laboratories, Inc. for personal injuries he claims to have sustained as a result of exposure to Buckman's product, Busan 30 WB ("Busan"). At the close of Andrews's case in a jury trial, the district court dismissed all of Andrews's state-law claims arising from the alleged deficiency of the Material Safety Data Sheet ("MSDS") that Buckman provided with shipments of Busan, concluding that those claims were preempted by the Federal Insecticide, Fungicide, and Rodenticide Act, 7 U.S.C. §§ 136-136v ("FIFRA").

On appeal, Andrews asserts that the district court erroneously applied the preemption doctrine, and that the dismissal of his state-law claims must be reversed. Upon consideration of the record, briefs, and oral argument, we find it unnecessary to reach the FIFRA preemption issue. We affirm the district court on the basis of Andrews's failure to meet the required standards of proof that the alleged defects in Buckman's MSDS actually caused his injuries.

I.

Andrews worked for twenty-two years as a paper tender at the Sonoco Company's paper mill in Hartsville, South Carolina. In order to perform his duties, Andrews was required to spend a substantial

2

amount of his time at the open end of a pulp processing machine, which the parties refer to as "Machine #3." This machine continuously produced a mist of the stock water flowing through it. Andrews was exposed to this mist for about half of his usual workday.

For years, Sonoco had treated its stock water with biocides, which are chemicals designed to kill the bacteria that naturally form in the paper stock. In the fall of 1992, Sonoco began testing an additional biocide, Busan, which is manufactured by Buckman. Busan is a pesticide and, consequently, FIFRA requires it to be registered with the Environmental Protection Agency ("EPA"). As part of the registration process, Buckman produced and the EPA approved a warning label that Buckman attaches to each container of Busan that it sells.

In addition to the EPA-approved label, Buckman was required to produce an MSDS, which it sends to all purchasers of Busan. The MSDS is not reviewed by the EPA, but is required by the Department of Labor's Hazard Communication Standards, 29 C.F.R.§ 1910.1200 (1992). The MSDS for Busan lists specific handling instructions and hazard warnings applicable to that product. Both Andrews and Buckman agree that an MSDS accompanied the Busan that Buckman shipped to Sonoco. The parties further agree that a copy of this MSDS was posted in a shed near Andrews's workstation at the paper mill.

Buckman's employees visited the Sonoco plant to supervise Sonoco's testing of Busan in its paper stock. The tests began on December 14, 1992, and Buckman's employees returned to the plant two to three times per week during the testing period to regulate the amount of Busan being injected into the paper stock. Three days after Sonoco began testing Busan, Andrews noticed a rash on his scalp and the back of his neck. As he continued working, the rash grew much worse and spread over his body, causing him to miss work during the spring of 1993. The Busan tests ended in June 1993, and Sonoco ultimately decided not to use the product, partly because of the problems Andrews was experiencing.

By October 1993, Andrews's doctor instructed him to stop working at the paper mill. One month later, Andrews was diagnosed with occupational contact dermatitis. Although Andrews returned to work

3

between May 1995 and July 1997, his dermatitis has since become disabling, and he can no longer work.

In October 1995, Andrews sued Buckman in South Carolina state court, alleging that exposure to Busan had caused his disabling injuries.[1] Andrews's complaint contained a wide range of South Carolina product liability claims relating to Busan: negligent manufacture, design, warning, and instruction as to use; breach of express and implied warranties; and strict liability. Buckman responded by removing the case to the District of South Carolina at Florence.

At trial, one of Andrews's primary theories was that the MSDS for Busan was legally insufficient--thus Buckman was negligent in preparing it--because it failed to warn against the hazards of dermal exposure to a mist of diluted Busan. Andrews claimed that a proper MSDS would have warned employees exposed to such a mist to wear waterproof clothing. However, Andrews testified that he never read the MSDS for Busan.

At the close of Andrews's case, the district court granted Buckman's motion to dismiss all of Andrews's failure-to-warn claims that were based on the claimed inadequacy of the Busan MSDS.[2] The district court concluded that allowing Andrews to pursue his state-law claims would violate FIFRA's prohibition against states imposing any requirements for labeling or packaging of pesticides"in addition to or different from" those required by FIFRA itself. See 7 U.S.C. § 136v. Andrews now appeals the district court's dismissal of his failure-to-warn claims.

II.

The parties focus primarily on the question whether the district court erred in concluding that Andrews's various state-law failure-to-warn claims are preempted by FIFRA. We have resolved several

_____

[1] Andrews also sued Betz Paper Chem, Incorporated, another chemical manufacturer. Betz has since been dismissed from the suit.
[2] The remainder of Andrews's case went to the jury, which returned a verdict in favor of Buckman on all claims.

4

cases involving FIFRA's preemptive effect on state-law tort claims,[3] but we need not analyze these issues today. Even if none of Andrews's claims is preempted by FIFRA, all of his failure-to-warn claims must fail because Andrews has offered insufficient proof that the alleged defects in Buckman's MSDS caused his injuries. Although the district court expressly refused to address the causation issue, we may nevertheless affirm its dismissal order on this alternative ground because it is fully supported by the record. Brewster of Lynchburg, Inc. v. Dial Corp., 33 F.3d 355, 361 n.3 (4th Cir. 1994).

Under South Carolina law, Andrews cannot succeed on his claim that Buckman negligently failed to warn him of the dangers posed by Busan unless he proves that Buckman's insufficient warning caused his injuries. Young v. Tide Craft, Inc., 242 S.E.2d 671, 675 (S.C. 1978) (elements of negligence include proximate cause). The improper warning of which Andrews complains is Buckman's MSDS for Busan. Specifically, Andrews contends that the MSDS is deficient because it fails to warn that dermal exposure to a mist of diluted Busan--like the mist to which Andrews was exposed--could be hazardous. Andrews argues that, had Buckman provided such a warning, his injuries might have been avoided.

But Andrews testified at his deposition and again at trial that he never read the MSDS for Busan, although it was posted near his workstation. Andrews further testified that he never looked at any posted MSDSs because, he believed, he had no reason to read them. This failure to read the MSDS for Busan, coupled with the absence of any other proof that Andrews otherwise was aware of its contents, necessarily precludes any causal link between the warnings in the MSDS and Andrews's injuries. See Lowe v. Sporicidin Int'l, 47 F.3d 124, 131 (4th Cir. 1995) (Maryland plaintiff's failure to read allegedly misleading advertisement barred her negligent-failure-to-warn claim).

---

[3] Under FIFRA, no state may "impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter." 7 U.S.C. § 136v(b). We have previously addressed the preemptive effect of this language. See Lowe v. Sporicidin Int'l, 47 F.3d 124 (4th Cir. 1995); Worm v. American Cyanamid Co., 5 F.3d 744 (4th Cir. 1993); Worm v. American Cyanamid Co., 970 F.2d 1301 (4th Cir. 1992).

5

Put differently, even a perfect warning could not have prevented Andrews's injury if Andrews never read or became aware of the warning.

Andrews attempts to bridge this causal gap by arguing that, when faced with a legally insufficient warning, South Carolina courts would presume causation. We recognize that other jurisdictions have adopted this approach. E.g., Ferebee v. Chevron Chem. Co., 736 F.2d 1529, 1539 (D.C. Cir. 1984) (applying Maryland law); Reyes v. Wyeth Labs., 498 F.2d 1264, 1281-82 (5th Cir. 1974) (applying Texas law). But we have previously concluded that South Carolina courts would not apply a "causation presumption" whenever a warning is proven insufficient: "There is no such presumption under South Carolina law, and we are unwilling to create one here." Odom v. G.D. Searle & Co., 979 F.2d 1001, 1003 (4th Cir. 1992). Andrews points to no development in South Carolina law since Odom--and we have found none-- that undermines our decision in that case. As a result, we cannot conclude that South Carolina courts would adopt this fundamental, burden-shifting presumption whenever a plaintiff proves that a warning is insufficient.

III.

Because Andrews's failure-to-warn claims must fail, even if they are not preempted by FIFRA, the district court's dismissal of those claims must be sustained, and its dismissal order is hereby affirmed.

AFFIRMED

6